In re Alan J. FADEN and Harriet B. Faden, Debtors.

INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,

v.

Alan J. FADEN and Harriet B. Faden, Defendants.

Bankruptcy No. 91–46948–H3–7.
Adv. No. 93–4012.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

May 16, 1994.

Carolyn A. Taylor, Houston, TX, for debtors Alan J. Faden and Harriet B. Faden.

M. Kevin Queenan, Munsch Hardt Kopf Harr & Dinan, Dallas, TX, for plaintiff Ins. Co. of North America.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The Court has heard Insurance Company of North America's Complaint seeking a declaratory judgment that a debt owed it on various instruments signed by Alan J. Faden is non-dischargeable as to both of the Debtors, Alan J. and Harriet B. Faden. After consideration of the evidence, the pleadings, and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith that the debt to INA is not dischargeable as to Alan J. and Harriet B. Faden. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such. The Court enters a separate Judgment in conjunction herewith.

### Findings of Fact

It is undisputed that the only notices sent to Insurance Company of North America ("INA") as to the existence of this bankruptcy proceeding were sent to an incorrect address. It is the Debtor's position, however, that the address was not so deficient as to result in the non-dischargeability of the debt.

In 1984, Alan Faden invested in Kentex Thoroughbred Ltd. No. 1, a Texas limited partnership. He financed most of his investment. He executed a subscription note, dated December 7, 1984, in the principal amount of $100,000.00, an Investor Bond Indemnification and Pledge Agreement dated March 18, 1985, and related investment documents. (Admissions of Fact, Pre–Trial Statement, Docket No. 29). INA subsequently brought suit in Fort Bend County, Texas and obtained a judgment on May 26, 1989, against Alan Faden pursuant to the underlying investment documents. The Fadens' bankruptcy was filed on August 29, 1991 (Main Case No. 91–46948–H3–7, Docket No. 1). Their discharge was entered on December 27, 1991 (Main Case No. 91–46948–H3–7, Docket No. 18). (Debtors' Exh. 1.)

The various instruments representing the agreement on which INA later sued and obtained judgment all show a specific mailing address for all notices, "Insurance Company of North America, c/o Waite Hill Services, Inc., 1000 Virginia Center Parkway, Richmond, Virginia 23295." (INA's Exh. 2) INA's suit in Fort Bend County, Texas, was brought by counsel, whose address was also readily obtainable from public records.

Faden's bankruptcy counsel attempted to obtain from the Fadens the correct addresses of their various creditors at the time the Fadens first sought her services. Counsel's secretary, Jeannie Price, made several attempts on behalf of counsel to obtain the necessary information. (Testimony of Jeannie Johnson Price.) The Court finds that Alan Faden was not forthcoming with his counsel as to his creditors' addresses. (Testimony of Alan Faden & Jeannie Johnson Price.)

The burden of obtaining the correct address of INA fell on counsel's secretary, who used the telephone book. The address for INA listed in the Southwestern Bell Business White Pages for the Greater Houston Area during March, 1991 through March, 1992 was "INA ... see CIGNA Companies–CIGNA Property & Casualty Companies ..." "CIGNA Companies ... 1360 Post Oak Boulevard...." (Debtors' Exh. 9.) Counsel's secretary also testified that she thought she might have called an agency in Austin that dealt with "licensing" insurance agencies, but she was uncertain of the name of the agency or whether she had even made the call. No telephone records or current information from any such agency were produced by Debtor's counsel. There was no service on the Registered Agent for service of process designated by INA with the Texas Secretary of State.

Additionally, a typographical error was made by the secretary when listing INA's address in the schedules and mailing list. (Testimony of Jeannie Johnson Price.) The Debtors' original and amended schedules and computer mailing cards reflect INA's address as "Suite 100, 1360 Post Oak Boulevard, Houston, Texas 77056." (Debtors' Exhs. 3, 4, 6 & 7.) There is an affidavit to the effect that there was no Suite 100 in the building. The Court notes that Ms. Price did the best she could in light of the following facts: she was not given adequate or correct information by the Debtors; she was not a trained investigator; Debtors' list of creditors was long (over 60 creditors); and counsel for Debtors had many other pending cases that required staff's attention.

The Court finds that Alan Faden's testimony was vague and not credible as to why he did not make a good faith effort to provide a correct address for this creditor. Indeed, this Court finds that Debtors demonstrated very little effort to provide counsel with proper addresses as to any of their creditors. However, INA is the only creditor which has pursued the matter.

INA presented credible testimony through Steven S. Hollberg, Operations Analyst with the Investor Bond Program with Waite Hill Services, Inc., which acts as agent for INA. He was serving in the Investor Bond Program at the relevant times in 1991 and 1992. He testified that INA did not receive notice at the proper address, nor through any other address of which he was aware. He testified that INA systematically reviews claims on which it has had to pay to evaluate chances of recovery from its guarantors. This Court finds that INA in this instance had pursued the matter with diligence, as it had already obtained a state court judgment. (INA's Exhs. 9 & 10.) Hollberg also testified that he does regularly pursue recovery on behalf of INA in Bankruptcy Courts. This Court finds that INA did all it could within the law. The Court is persuaded that had INA received proper notice, it would have properly pursued its claims in the Bankruptcy proceeding. However, the Court finds that INA did not have that opportunity.

The Debtor's primary defense was to call as a witness the individual who worked in the mail room for Texas First Securities, the tenant in 1991 of the first floor of the building located at 1360 Post Oak Boulevard in Houston, Texas. Donald C. Davis testified that he was mail clerk for Texas First Securities since 1989 and that each tenant had separate mail boxes in the mail room. Davis testified that when he received mail addressed to someone other than Texas First Securities, the received mail was sometimes returned to sender, sometimes given back to the U.S. Postal Service carrier. Davis could not recall whether any door in the twenty-five story building actually bore the suite number "100." (Testimony of Donald C. Davis.) The building at 1360 Post Oak was managed by Interfin Corporation. The

**308**

Court notes that the Affidavit of Matt Waller, the Vice President of Interfin Corporation, states that there was no address noted as Suite 100 at the building and that Texas First Securities was the only tenant occupying space on the first floor during 1991. (INA Exh. 15, paragraph 3.) The Court finds that any notice addressed to CIGNA or INA at "Suite 100" was incorrectly addressed and that there was no system in place in the building which would reliably result in incorrectly addressed mail's reaching its addressee. Although Davis' testimony was credible, the Court finds that this testimony was of little service to the Debtors.

*Conclusions of Law*

■ 11 U.S.C. § 523 excepts from discharge those debts owed to creditors who were not noticed of the bankruptcy. § 523(a)(3)(B) states that an individual debtor is not discharged from any debt neither listed nor scheduled under § 521(1) with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit a timely filing of a proof of claim and timely request for a determination of dischargeability of such debt unless such creditor had notice or actual knowledge of the case in time for such timely filing and request. Faden's debt to INA was over $20,000.00, plus interest, attorney fees, court costs and all future payments and expenses incurred by INA, pursuant to the investment documents. It is one Debtors are serious about wanting discharged, but they failed to bring same seriousness to giving this creditor adequate notice of the bankruptcy so that it could pursue its rights during the bankruptcy proceeding.

The notice requirements of the Code provide the creditors their opportunity to appear in the forum Congress has chosen as the one for relief for debtors. This creditor did not have the chance to participate in the proceedings.

■ The Fadens had over sixty creditors scheduled. (Debtors' Exhs. 3, 6 & 7.) Alan Faden was an investor; this resulted in Debtors' affairs being somewhat complex. A proper bankruptcy filing in such a case does indeed require some diligence on the part of the Debtors and their counsel. The burden is on the Debtors to accurately complete their schedule of names and addresses of creditors. Bankruptcy Rule 1007(a)(1); 11 U.S.C. § 521(1); *Matter of Springer*, 127 B.R. 702 (Bankr.M.D.Fla.1991) and cases cited therein. This presents some burden to Debtors—but the benefit sought is nothing less than a discharge of all the debts properly listed. To take advantage of the benefits of bankruptcy, the Debtors have a duty to list names and addresses of each of their creditors. *Springer, supra.* A proper list includes a viable address for each creditor so that it may receive notice of the proceedings and have the opportunity to fully participate, including opportunity to file a proof of claim, object to discharge in accordance with 11 U.S.C. § 727 or object to dischargeability of a debt in accordance with 11 U.S.C. § 523. For the Debtors to gain this extraordinary benefit, they must at a minimum undertake the burden of adequate notice to the creditors as to whom they seek to be freed from the obligation to pay. · This is the statutory arrangement Congress has established, *inter alia,* in the interplay between 11 U.S.C. § 521 (Debtor's duties), § 523 (Exceptions to discharge), and § 727 (Discharge).

■ An adjudication that purports to determine the rights of adverse parties will not be accorded finality unless all affected individuals are given notice reasonably calculated to apprise them of the pendency of the proceeding and the scope of their rights, together with information sufficient to provide them with an opportunity to prepare and present a response. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709–10, 77 L.Ed.2d 180 (1983); *Memphis Light, Gas & Water Div. v. Kraft,* 436 U.S. 1, 14–15, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978); *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). This two part requirement—notice reasonably calculated both to reach the parties and to enable them to respond rationally—is a necessary corollary to the more fundamental requisite of due process that each party be given an opportunity to be heard. *Greene v. Lindsey,* 456 U.S. 444, 449, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982).

The identity of the persons to be affected must be ascertained with reasonable certainty. Additionally, the debtor is required to utilize the means most likely to achieve actual notice to those affected persons under the circumstances. *Greene v. Lindsey,* 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174–75, 94 S.Ct. 2140, 2150–51, 40 L.Ed.2d 732 (1974); *See also Mullane v. Central Hanover Trust Co., supra* 339 U.S. at 314–19, 70 S.Ct. at 657–60.

In determining the constitutional adequacy of notice, *Mullane* made clear that "whether a particular method of notice is reasonable depends upon the particular [factual] circumstances." *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Due process requires that the Debtor's known creditors be given actual notice. *See New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

The Court finds that Debtor had available an address for notice to INA pursuant to the loan documents, and failed to use it. The notice to sent to the address of INA's parent, CIGNA Insurance Company, was not correctly addressed. Even had it been so, it is not imputed to INA. (See INA's Exh. 11.) Notice to a subsidiary corporation of the creditor is insufficient to put the creditor on notice or grant to the creditor actual knowledge of the debtor's bankruptcy proceeding. *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451 (6th Cir.1982). Further, notice or actual knowledge can not be imputed to the creditor where the subsidiary corporation, which was alleged to be the creditor's agent, is not an attorney nor where there was no actual or implied authority either to collect the entire outstanding balance of the debt, represent the creditor in the bankruptcy proceedings or receive legal notices on behalf of the creditor. *Id.* This Court finds that there is no showing that CIGNA had actual or apparent authority to bind INA or receive notice as agent for INA. The Court finds that notice or actual knowledge of the bankruptcy proceeding could not be imputed to INA through service on CIG-NA, even had such attempted service been properly addressed.

Although the Debtor asserts that a telephone directory is a proper source for determining a creditor's address and a debtor may rely on the telephone directory to procure such address, the Debtor's reliance is not warranted when the Debtor by the exercise of reasonable diligence can provide more accurate information. *Matter of Robertson,* 13 B.R. 726 (Bankr.E.D.Va.1981). This Court finds that the Debtor did have more reliable information in his original investment documents with INA and in INA's correspondence with and suits against him. (Testimony of Steven Hollberg, INA's Exhs. 1, 2, 3, 4, 8, 9 & 10.) There was no showing he gave it to his counsel.

Debtor, Harriet B. Faden contends that because she was not personally liable on the INA investment documents, was not a defendant in the state court suit resulting in Judgment against Alan J. Faden and because INA did not file another suit against her to collect the Judgment indebtedness, she is entitled to be dismissed. (Joint First Amended Pre–Trial Statement, Contentions of Harriet Faden, Docket No. 29.)

Alan J. and Harriet B. Faden filed a Joint Voluntary Chapter 7 petition in bankruptcy. (Main Case No. 91–46948–H3–7, Docket No. 1.) Both Debtors are responsible for complying with the Code requirements regarding the debtor's duties pursuant to 11 U.S.C. § 521. One of the duties includes the proper scheduling and listing of creditors, discussed in detail above.

The debt to INA was listed in Schedule F and characterized by Debtors as a joint debt. (Debtors' Exhs. 3, 7 & 7.) INA properly filed its declaratory complaint against both Debtors and requested that Debtors' debt to INA be deemed nondischargeable as a result of improper notice of the bankruptcy proceeding. (Complaint, Docket No. 1.) This Court found that notice was improper. (See discussion above.) Although Harriet Faden contends that grounds for non-dischargeability cannot be attributed to her as an innocent spouse, (Joint First Amended Pre–Trial Statement, Contention of Harriet Faden,

310

Docket No. 29) her status as an "innocent" spouse is not at issue. She was herself under an obligation to fulfill her duties as a debtor to properly list creditors since she filed for relief under the Code. The basis for the INA debt's being non-dischargeable is the lack of proper notice. The debt, regardless of its character and who is responsible for its payment, is not dischargeable in this proceeding. Thus, Debtors and INA can proceed as to this debt as if no bankruptcy were in existence. INA and the Fadens are free to pursue in state court or other appropriate forum whatever remedies and defenses are available to each of them as to this debt.

The issue of collection of the INA debt from either Alan J. or Harriet B. Faden is separate from that of dischargeability and one which this Court need not address. (See Complaint, Docket No. 1, wherein INA only shield determination of dischargeability.) However, the Court does note that Harriet Faden admitted she may not shield community property in which she holds an interest from satisfaction of the debt if determined to be nondischargeable. (Joint First Pre–Trial Statement, Contention of Harriet Faden, Docket No. 29.)

Based upon the above Findings of Fact and Conclusions of Law, the Court will enter a separate Judgment declaring that the debt to INA is not dischargeable as to Alan J. and Harriet B. Faden.

### JUDGMENT

Based upon the separate Memorandum Opinion signed this same day, it is

ORDERED that the debt to INA is not dischargeable as to Alan J. Faden and Harriet B. Faden, and it is further

ORDERED that the parties to this Adversary Proceeding may pursue in state court or other appropriate forum, whatever rights and remedies and defenses they may have in connection with this debt.